

FILED by _____ D.C.
ELECTRONIC

January 28, 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT  FLORIDA

Plaintiffs
John Quiirindongo
Irina Quirindongo

V                                          CIVIL RICO COMPLAINT

Defendants                    **10-60132-CIV-Cooke/Bandstra**
Robert Fazio GOLDLINE
Larry Shepherd ANA
Bill Mitchell BBB

Defendant GOLDLINE is guilty of multiple FRAUD under the following statutes:

1)    RICO racketeering activities Chapter 96 of Title 18 of the USC, *IS* U.S.C § 1961-1968,

2)    Mail fraud (Title 18, USC, Section 1341) Title 18 Part I Chapter 63. 3) # § 1345

3)    Scams Act (18 U.S.C. Sect; 2326)

4)    Wire fraud, false published written Internet advertising, false written Email, long distance defrauding with telephone communication each crosses State lines and easily comes under these statutes 18 U.S.C. § 1343 (2007), Pasquantino v. United States, 125 S. Ct. 1766, 1784 (2005) (Ginsburg, J., dissenting) (citing Durland v. United States, 161 U.S. 306, 313 (1896)) McNally v. United States, 483 U.S. 350, 360 (1987)). Cleveland v. United States, 531 U.S. 12, 25 (2000), United,States v. Autuori, 212 F.3d 105 (2d Cir. 2000) (Def \

Dendant GOLDLINE charged with wire fraud and mail fraud violations); United States v. Zichettello, 208 F.3d 72 (2d Cir. 2000) (Defendant GOLDLINE charged with wire fraud and RICO violations). 18 U.S.C. § 1341-18 U.S.C. § 1346 (2007). Section 1346 states that the term "scheme or artifice to defraud" includes a scheme or artifice to defraud another of the intangible right of honest services. Section 1346 was enacted to counter the Supreme Court's decision in McNally v. United States, 483 U.S. 350, 360 (1987). See United States v. Sawyer, 239 F.3d 31, 39 (1st Cir. 2001) according to United States v Rybicki, 287 F.3d 257 (2d Cir. 2002

5)    LIBEL statement in written public official testimony with intentions to injure and defame Plaintiff with malice, Silver, 648 So. 2d at 242. See also Achievers Unlimited, Inc. v. Nutri Herb, Inc., 7 10 So. 2d 7 16, 7 18-19 (Fla. 4th DCA 1998) (same); Caridu, 424 So. 2d at 849 (same); Caridu, 424 So. 2d at 849 (same) 50 Am.Jur.2d libel and slander 1-546, Fla. Stat. § 836.01 (2005).

6) Senior citizen violations, 12 Stat. 520 Public Law 105-184—June 23, 1998, Telemarketing Fraud Prevention Act of 1998".Sec. 2. Criminal Forfeiture of Fraud Proceeds Section 982 of title 18, Scams Act (18 USC sect; 2326), The long-arm statute section 48.193, Florida Statutes (2002) authorizes a State (Florida) to exercise personal jurisdiction over a non-resident Defendant GOLDLINE, as long as the exercise of jurisdiction is consistent with federal due process requirements.

7) Businesses that send faxes, make phone calls, or mail documents to commit fraud can and will be now sued in Florida for claims of fraud, negligence or other wrongful conduct arising out of their long-distance commercial activity, under a far-reaching recent decision by the Florida Supreme Court "an intentional tort of LIBEL aimed .. .and resulting in injuries to a Florida resident subjected Defendant GOLDLINE to the reach of our long arm statute." Silver, 648 So. 2d at 242. See also Achievers Unlimited, Inc. v. Nutri Herb, Inc., 7 10 So. 2d 7 16, 7 18-19 (Fla. 4th DCA 1998) (same); Caridu, 424 So. 2d at 849 (same); Caridu, 424 So. 2d at 849 (same) 50 Am.Jur.2d libel and slander 1-546, Fla. Stat. § 836.01 (2005).

8) 775.0844 White Collar Crime Victim Protection Act which took effect July 1, 2001,

9) Florida's Deceptive and Unfair Trade Practices Act [subsection] 501.201 et seq.,

Plaintiff seeks:          *

1) Money damages be given of $500,000 as Plaintiff victim of Defendant GOLDLINE racketeering or treble as required under RICO to $1,500,000 or such recompense as deemed proper by the Court and as required under

a) RICO
b) Senior Citizen's statutes,
c) Mail Fraud statutes,
d) Wire Fraud statutes,
e) Scams Act,
f) Florida's Deceptive and Unfair Trade Practices Act and
g) White Collar Crime Victim Protection Act.

2) Money damages be given for the original $34,997 purchase of Platinum loz eagles which had doubled in value when Plaintiff asked to be made whole or over $65,000 trebled to well over $205,000 as required under RICO.

3) Money damages be given for the Libel/Defamation compensation of $1,000,000 or $3,000,000 treble as required under RICO.

4) Money damages be given for $15,000 under senior citizen's statutes for "each such violation" compounded treble to $45,000 as required under RICO.

5) The 174 20 gold Swiss francs in Plaintiffs possession are the object and medium of Defendant GOLDLINE fraud and should remain in Plaintiffs possession.

6) Compensation of $100,000 or $300,000 treble as required under RICO be given to Plaintiff for one yrs work by Plaintiff in setting up legal investigative complaints to various government agencies and miscellaneous legal costs incurred including writing this pro se formal Civil complaint herewith.

7) Other money damages overlooked by Pro Se Plaintiff if deemed proper by the Court.

Plaintiff's damages claim as required under RICO is a TOTAL over $5,050,000 and 174 20 gold Swiss francs cited above explained in detail below plus any additional compensation overlooked by Pro Se

Plaintiff if deemed proper by the Court.

Plaintiff is Entitled To Discovery to be performed by the Defendant GOLDLINE. See *Slagle* v. *ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996). Plaintiffs suggested course of action (corroboration) A motion for judgment on the pleadings can be successful only when all material allegations of fact are admitted or not controverted in the pleadings.

1) Defendant GOLDLINE must furnish a list of ALL who purchased the 20 gold Swiss franc from Defendant GOLDLINE with their addresses for the last five (5) yrs starting in January 2003 and all salesmen, account executives and others who serviced them.
2) Defendant GOLDLINE must furnish a list of employees with addresses where the mail fraud and other fraudulent infractions against the Plaintiff in this formal complaint took and place and others who complained of being defrauded on ripoffreport.org and Defendant GOLDLINE employees who serviced them. Included must be:

   i.    Clinton Ross, former Defendant GOLDLINE employee
   ii.    JC Lee, former Defendant GOLDLINE employee
   iii.    High pressure salesman yet unnamed who ambushed and defrauded Plaintiff.
   iv.    High pressure lawyer who called Plaintiff and Plaintiffs brother Frank Quintana and promised but never sent 25 platinum 1 oz eagles
   v.    Kyung Park defrauded client of Defendant GOLDLINE
   vi.    David Gershon, Defendant GOLDLINE employee

In the matter of Defendant ANA (The American Numismatic Association) the Plaintiff invokes the RICO law with the long arm statute. Defendant ANA was apprised in real time and documented in real time by the Plaintiff in ripoffreport.org showing when, how and where the DEFENDANT Goldline used systemic fraud unusually scheming together and planning on many mDefendant ANAgement levels (This is also called ORGANIZED CRIME RACKETEERING). Defendant Goldline charged Plaintiff over 34,000 dollars for 174 overpriced numismatic 20 Swiss gold franc coin when the spot price for 1 oz of gold was $692 with an impromptu unannounced high-pressure salesman over the Defendant Goldline worksite phone seeking to ambush and defraud an unsuspecting novice with a toxic asset the 20 Swiss gold franc with a quick phone decision sale to a reluctant and inexperienced geriatric client.

Previous Court prosecution of Defendant Goldline (See Exhibit #4) led to a settlement compensation for similar illegal methods of long-distance selling using deceit and lies by 1) Email, 2) post office mail advertisement 3) the Internet and 4) phone (RICO long-distance mail and wire fraud) about the overpriced numismatic 20 Swiss gold franc which was pointed out to Defendant ANA as were other serious acts of Defendant Goldline fraud especially of Kyung Park and the 20 Swiss gold franc shown on Defendant BBB and also on ripoffreport.org. "Serious consideration, however, should be given to the prosecution of any scheme which in its nature is directed to defrauding a class of persons, or the general public, with a substantial pattern of conduct." (USAM9-43.100). "Pattern of racketeering activity" requires at least two acts of racketeering activity committed within ten years of each other. 18 U.S.C.A. § 1961(5). The RICO goal is "the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969 with no action taken by Defendant ANA.

Defendant ANA gave tacit approval for DEFENDANT Goldline fraud by not taking independent action canceling Defendant Goldline membership. Defendant ANA thereby not only violated RICO but infringed upon Defendant ANA's own MISSION STATEMENT dedicated to keeping a Law abiding membership. The original Plaintiff purchase from the Defendant Goldline that was hijacked of over 34 thousand dollars of Platinum doubled to 70 thousand dollars. And if Plaintiff had been advised to buy 1 oz gold coins, Plaintiff also would have doubled Plaintiff investment.

While the spot price of gold almost doubled going from 692 dollars an oz to a high of over 1200 dollars an oz, the 20 Swiss gold franc lost money with poor chances to break even until the spot price of gold hits well over 1400 dollars an oz. Numismatic coins are for "experts" Plaintiff was told later by a coin dealer the gold and platinum spot prices are government regulated but in this case Plaintiff was defrauded by an "expert" the Defendant Goldline.

The Defendant ANA kept Defendant Goldline as a member. Defendant ANA "saw" no Plaintiff damages and "saw" no Defendant Goldline fraud. DEFENDANT Goldline may still be practicing fraud with the overpriced numismatic 20 Swiss gold franc three (3) yrs later and is a member of Defendant ANA in good standing.

The Plaintiff seeks for damages from Defendant ANA one million dollars which is by default under RICO three million dollars for giving tacit approval complicity to fraud by not canceling Defendant Goldline membership after multiple prima facie complaints documented on ripoffreport.org and pointed out by Plaintiff .

In the matter of Defendant BBB (The Better Business Bureau) the Plaintiff invokes the RICO law with the long arm statute. Defendant BBB was apprised in real time and documented IN REAL TIME by the Plaintiff in ripoffreport.org showing when, how and where the DEFENDANT Goldline used systemic fraud unusually scheming together and planning on many mDefendant ANAgement levels (This is also called ORGANIZED CRIME RACKETEERING). The Defendant Goldline charged Plaintiff over 34,000 dollars for 174 overpriced numismatic 20 Swiss gold franc coins with an impromptu unannounced high-pressure salesman over the Defendant Goldline worksite phone seeking to ambush and defraud an unsuspecting novice with a toxic asset quick phone decision sale to a reluctant inexperienced client.

Previous Defendant Goldline Court prosecution (See Exhibit #4) led to a settlement with compensation for similar illegal methods of long-distance selling using deceit and lies by 1) Email, 2) post office mail advertisement 3) the Internet and 4) phone (RICO long-distance mail and wire fraud). Defendant Goldline sold the overpriced numismatic 20 Swiss gold franc to Plaintiff under high pressure by Defendant Goldline which was documented and pointed out to Defendant ANA as were other serious acts of Defendant Goldline fraud to Kyung Park and others with the 20 Swiss gold franc shown on ripoffreport.org.

"Serious consideration, however, should be given to the prosecution of any scheme which in its nature is directed to defrauding a class of persons, or the general public, with a substantial pattern of conduct." (USAM9-43.100) "Pattern of racketeering activity" requires at least two acts of racketeering activity committed within ten years of each other. 18 U.S.C.A. § 1961(5). The RICO goal is "the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969 No action to cancel Defendant membership taken by Defendant BBB.

Defendant BBB gave tacit approval for Defendant Goldline LIBEL (Plaintiff was needlessly called in writing EMBEZZELER a felony crime by Defendant Goldline on a Defendant BBB public document for placing this complaint) and Defendant BBB by not taking independent action in canceling the DEFENDANT Goldline Defendant BBB membership thereby violated and infringed upon Defendant BBB's own MISSION STATEMENT dedicated to keeping a Law abiding membership.

The original Plaintiff hijacked purchase from the Defendant Goldline of over 34 thousand dollars of Platinum doubled to 70 thousand dollars. While at the same time the spot price of gold almost doubled from 692 dollars an oz to a high of over 1200 dollars an oz, the 20 Swiss gold franc on the other hand lost money with poor chances to break even until the spot price of gold hits well over 1400 dollars an oz. This was well known by the Defendant Goldline. And if Plaintiff had been advised to buy 1 oz gold coins, Plaintiff also would have doubled Plaintiff investment. Numismatic coins are for "experts" Plaintiff was told later by a coin dealer and in this case Plaintiff was defrauded by an "expert" the Defendant Goldline.

The Defendant BBB kept Defendant Goldline as a member. The Defendant BBB "saw" no Plaintiff damages, "saw" no LIBEL and "saw" no Defendant Goldline fraud. DEFENDANT Goldline may still be practicing fraud with the overpriced numismatic 20 Swiss gold franc today and remains forever a member of Defendant BBB in good standing.

The Plaintiff seeks for damages from Defendant BBB one million dollars which is by default under RICO three million dollars for giving tacit approval complicity to fraud by not canceling Defendant Goldline membership after multiple prima facie complaints documented on ripoffreport.org and pointed out by Plaintiff.

All applicable statutes and defrauded Plaintiff history explained in detail

The Mail Fraud Statute TITLE 18 PART I CHAPTER 63.

1) #§1341. Frauds and swindles
2) # § 1343. Fraud by wire, radio, or television
3) # § 1345. Injunctions against fraud
4) # § 1346. Definition of "scheme or artifice to defraud"
5) #§ 1349. Attempt and conspiracy

The False Representation Statute (Title 39, USC,'Section 3005) 501.2077 *Violations involving senior citizen* or handicapped person; civil penalties; presumption. 2) Any person who is willfully using, or has willfully used, a method, act, or practice in violation of this part, which method, act, or practice victimizes or attempts to victimize senior citizens or handicapped persons, and commits such violation when she or he knew or should have known that her or his conduct was unfair or deceptive, is liable for a civil penalty of not more than $15,000 for each such violation.

The Florida Statutes 817.034 3. Services.

(e) "Scheme to defraud" means a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act.(f) "Value" means value determined according to any of the following: 1 .a. The market value of the property at the time and place of the offense "Property" means anything of value

4) OFFENSES.- (a) Any person who engages in a scheme to defraud and obtains property thereby is

guilty of organized fraud, punishable as follows: 2. If the amount of property obtained has an aggregate value of $20,000 or more, but less than $50,000, the violator is guilty of a felony of the second degree, punishable as provided in s. 775.082. s. 775.083. or s. 775.084.

(c) Notwithstanding any contrary provisions of law, separate judgments and sentences for organized fraud under paragraph (a) and for each offense of communications fraud under paragraph (b) may be imposed when all such offenses involve the same scheme to defraud.

From the Florida Attorney General McCullum website:

*"Florida's Deceptive and Unfair Trade Practices Act, which is meant to protect individual consumers and legitimate businesses from various types of illegal conduct in trade or commerce. Pursuant to the Act, the attorney general investigates and files civil actions against persons who engage in unfair methods of competition, unfair, unconscionable or deceptive trade practices, including, but not limited to, ...false or misleading advertising. "* See exhibits 1 and 2

501.2075 Civil penalty.—Except as provided in s. 501.2077, any person, firm, corporation, association, or entity, or any agent or employee of the foregoing, who is willfully using, or has willfully used, a method, act, or practice declared unlawful under s. 501.204, or who is willfully violating any of the rules of the department adopted under this part, is liable for a civil penalty of not more than $10,000 for each such violation. Willful violations occur when the person knew or should have known that his or her conduct was unfair or deceptive or prohibited by rule.

*Defendant GOLDLINE is guilty of Wire Fraud.*

Wire fraud is an act of fraud using electronic communication. Black's Law Dictionary 687 (8th ed. 2005). This electronic communication can be via wire, radio, or television. 18U.S.C.§ 1343(2007).

The Supreme Court has "several times observed that the wire fraud statute has a long arm, extending to 'everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future.'" Pasquantino v. United States, 125 S. Ct. 1766, 1784 (2005) (Ginsburg, J., dissenting) (citing Durland v. United States, 161 U.S. 306, 313 (1896)). But the Court has also noted that an "incautious reading of the statute could dramatically expand the reach of federal criminal law, and we have refused to apply the proscription exorbitantly." Id. (citing McNally v. United States, 483 U.S. 350, 360 (1987)). In short, there is some recognition by the Supreme Court that given the statute's broad applicability, "a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress" is discouraged. Cleveland v. United States, 531 U.S. 12, 25 (2000).

Despite the Court's warnings, however, the wire fraud statute has been applied to a wide range of activities, as well as having been applied in conjunction with a wide range of other criminal statutes. See Pasquantino (statute used to prosecute U.S. citizens for smuggling cheap liquor into Canada); United States v. King, 590 F.2d 253 (8th Cir. 1978) (statute used to prosecute individual in scheme to sell herbicide); Neder v. United States, 527 U.S. 1 (1999) (Defendant GOLDLINE charged with wire fraud, mail fraud, and bank fraud violations); United States v. Autuori, 212 F.3d 105 (2d Cir. 2000) (Defendant GOLDLINE charged with wire fraud and mail fraud violations); United States v. Zichettello, 208 F.3d 72 (2d Cir. 2000) (Defendant GOLDLINE charged with wire fraud and RICO violations)Much like the wire fraud statute, 18 U.S.C. § 1341, it is simpler to say that wire fraud

consists of devising a scheme or artifice to defraud and then using the nation's telecommunications networks to carry that scheme out. The Punishment - A violation of section 1343 can be punished by a fine, imprisonment for not more than 20 years, or both.

*Case Law Interpreting Section 1341.* The essential elements of a violation of section 1343 are fairly simple. To sustain a charge of wire fraud under section 1343, the (Plaintiff) must prove two things: 1) the existence of a scheme to defraud, and 2) the use of wires for the purpose of executing the scheme. See United States v. Andrade, 788 F.2d 521, 527 (8th Cir. 1986); United States v. Gordon, 780 F.2d 1165, 1171 (5th Cir. 1986);-United States v. Cen-Card Agency, F. Supp. 313, 316 (D.N.J. 1989). The use of wire services to accomplish the fraud provides a "sufficient nexus with the scheme" to justify using the wire fraud statute.

Recently, however, a "materiality" requirement has developed. A matter is material if "a reasonable man would attach importance to its existence or nonexistence" in determining a course of action, or "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important" in determining a course of action, even though a reasonable man might not. *Neder v. United States, 527 U.S. 1, 22 n.5 (1999) (quoting Restatement (Second) of Torts § 538 (1976)).* The court explains that based "solely on a 'natural reading of the full text,' materiality [is] not an element of the fraud statutes." Id. at 21 (1999) (internal citations omitted). However, because a statute is presumed to incorporate common-law understanding of an issue when it is codified, and fraud required a material misrepresentation in the common law, "under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses, [the Court] cannot infer from the absence of an express reference to materiality that Congress intended to drop that element from the fraud statutes." Id.at 21-23. Therefore, materiality is a requirement. Materiality is a <u>legal</u> term which can have different meanings, depending on context. When speaking of facts, the term generally means a fact which is "significant to the issue or matter at hand". <u>Black's Law Dictionary,</u> 7th ed.

*18 U.S.C. § 1346 (2007). Section 1346* states that the term "scheme or artifice to defraud" includes a scheme or artifice to defraud another of the intangible right of honest services. Section 1346 was enacted to counter the Supreme Court's decision in McNally v. United States, 483 U.S. 350, 360 (1987). See United States v. Sawyer, 239 F.3d 31, 39 (1st Cir. 2001). According to *United States v. Rybicki, 287 F.3d 257 (2d Cir. 2002),* the elements necessary to establish the offense of honest services fraud are:

1) a scheme or artifice to defraud for the purposes of depriving another of the intangible right of honest services where it is reasonably foreseeable that the scheme could cause some economic or pecuniary harm to the victim that is more than de minimis and
2) use of the mails or wires in furtherance of the scheme. Rybicki at 266.

The enactment of section 201346 has greatly complicated statutory analysis of the wire fraud statute. "While the legislative history of§ 1346 seems to indicate an intention to resurrect the pre-McNally case law relating to the deprivation of intangible rights by use of the mails," some case law has determined that "pre-McNally cases construing the prior statute are not binding, and that the new offense was defined by statute... not by pre[-]McNally judicial decisions." United States v. Adier, 274 F. Supp. 2d 583, 586 (S.D.N.Y. 2003) (interpreting the mail fraud statute). In short, the effect of section 1346 remains to be seen, but there is general acceptance of the notion that "convictions under § 1346 that

involved schemes ...in which the Defendant GOLDLINE breached or induced the breach of a duty owed by an employee or agent to his employer or principal that was enforceable by an action at tort" must be upheld. Rybicki at 264.

*Defendant GOLDLINE is accused by Plaintiff guilty of fraud online on the WWW* in accordance with the "long arm" statute section 48.193, Florida Statutes (2002) Plaintiff and others published a diary blog in ripoffreport.org with attention to various agencies and now with this letter offers ample facts and evidence and where to get written sworn statement corroboration.

A prior instance of Defendant GOLDLINE FRAUD that mentioned the 20 gold Swiss franc was brought forth and prosecuted on many levels by a Missouri senior citizen couple against Defendant GOLDLINE and resulted in a *CONSENT ORDER Missouri Case No. AP-06-24* (see exhibit 3, google or ripoffreport.org.) with restitution of $217,267.87 and a $39,000 fine levied against Defendant GOLDLINE was also published online and in ripoffreport.org. This together with the many complaints about fraud in ripoffreport.org most mentioning the 20 gold Swiss franc indicates that the 20 gold Swiss franc scam against the Plaintiff was not a one-time affair but a systemic systematic ongoing Defendant GOLDLINE management authorized procedure used over and over again. The Federal Missouri Consent Order substantiates the proper prosecuting venue is in FLORIDA, the Plaintiffs home State.

Under Title 18, USC, Section 1014,

It is a federal crime to commit fraud using a wire communication that travels in interstate

or foreign commerce. 18 U.S.C. 1343 reads as follows

Fraud by Wire, Radio or Television (Wire Fraud) -

Whoever having devised, or intending to devise any scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses, representations,

or promises transmits, or causes to be transmitted, by wire, radio or television

communication in interstate or foreign commerce, any writings, signs, signals, pictures,

or sounds for the purpose of executing the scheme or artifice shall be or imprisoned for

more than 20 years, fined or both. Title 18, USC, Section 1349 Attempt and conspiracy. You have fraud when someone: 1) Lies to you (to maximize their profit) 2) Conceals from you important downside negative information (such as fees using in this case a high- pressure salesman and a talking points flier received by the plaintiff by FedEx (mail fraud.) exhibit2 3) You justifiably rely on the lie or concealment (because of their "expertise") 4) You are hurt one way or another because of the lie or concealment Defendant GOLDLINE did all this and used the US MAIL wire transfers, the Internet and public carriers such as FedEx in the commission of their grand larceny felony fraud crime.

**Defendant GOLDLINE lied on every management level verbally on telephone in -writing and in Email and especially on Defendant GOLDLINE fliers received by the Plaintiff by FedEx (mail fraud.) - see exhibits 1 and 2 - RICO can apply here See** <u>Drexel Bumham Lambert,</u> was threatened with a RICO indictment under the legal doctrine that "corporations are responsible for their employees' crimes."

In the matter of the 20 gold Swiss franc Defendant GOLDLINE communicated false information. "Communicates false information" means to communicate information that is false, and that the communicator knows is false, under circumstances in which the information may reasonably be expected to be believed. USC, Title 18 Sec 1037

(a) CRIMINAL VIOLATION — Whoever engages in any conduct, with intent to convey false or misleading information, under circumstances where such information may reasonably be believed and where such information concerns an activity which would constitute a violation of section 175, 229, 831, or 2332a, shall be fined under this title or imprisoned not more than 5 years, or both.

(b) CIVIL ACTION -Whoever engages in any conduct, with intent to convey false or misleading information, under circumstances where such information concerns an activity which would constitute a violation of section 175, 229, 831, or 2332a, is liable in a civil action to any party incurring expenses incident to any emergency or investigative response to that conduct, for those expenses.

(c) REIMBURSEMENT — The court, in imposing a sentence on a Defendant GOLDLINE who has been convicted of an offense under subsection (a), shall order the Defendant GOLDLINE to reimburse any person or entity incurring any expenses incident to any emergency or investigative response to that conduct, for those expenses. 501.206 Investigative powers of enforcing authority.       "•;

If, by his or her own inquiry or as a result of complaints, the enforcing authority has reason to believe that a person has engaged in, or is engaging in, an act or practice that violates this part, he or she may administer oaths and affirmations, subpoena witnesses or matter, and collect evidence.

501.2105 Attorney's fees.— (1) In any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Plaintiffs complaint against Defendant GOLDLINE has sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute, section 48.193, Florida Statutes (2002), i.e., whether Defendant GOLDLINE performed any of the acts delineated in the statute. Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). If such facts are alleged, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements of the United States Constitution. Id. "Factors that go into determining whether sufficient minimum contacts exist." Taskey v. Burtis, 785 So. 2d 557,t559 (Fla. 4th DCA 2001). In Plaintiffs case, obvious approval from the high level Defendant GOLDLINE management with Defendant GOLDLINE fliers received by the Plaintiff by FedEx (mail fraud.) exhibit 1 - augmented and reinforced the scam. Defendant GOLDLINE account executives and lower levels of the Defendant GOLDLINE sales staff followed orders and overall much upper level management officials of Defendant GOLDLINE involvement in fraud existed. This was done as evidenced by the Missouri Consent Order and the ANA (American Numismatic Association) tacit complicity and fraud approval as ANA and Dr. Kyoung Park of California were informed by exact copies "cc" from Plaintiffs to Defendant GOLDLINE correspondence of Email giving ANA day to day mediation Defendant GOLDLINE to Plaintiff and Plaintiff to Defendant GOLDLINE information from day one in October 2007 when Plaintiff uncovered the vast extent of Defendant GOLDLINE fraud. ANA and Defendant GOLDLINE both violated their own code of ethics and adherences to ANA bylaws by giving tacit approval with a wink and a nod to fraud with illegal Defendant GOLDLINE fliers received by the Plaintiff by FedEx (mail fraud.) on a grand scale with known documented repeated complaints of fraud by a multitude of

various clients throughout the entire USA documented by Plaintiff and in ripoffreport.org. Instead ANA requested by Email to mediate in Plaintiffs case in October 2007 as an obvious cover-up since ANA was well aware of previous complaints of fraud but took no action pursuant to their bylaws or code of ethical conduct and Defendant GOLDLINE continues to defraud unimpeded

15 U.S.C. §45 (USC, chapter 15, section 45) prohibits "unfair and deceptive acts or practices in commerce." Which covers illegal advertising. Defendant GOLDLINE may still be delivering these fliers by FedEx designed to deceive consumers. Exhibit 1 - Included is Plaintiffs critique of the Defendant GOLDLINE flier (mail fraud) exhibit 2 - pointing out misleading wording and deceitful behavior. The same talking points were also used by high-pressure Defendant GOLDLINE salesmen adding "Defendant GOLDLINE has been in business over 40 yrs and Joe Battaglia the CEO has a radio show. We know what we are doing."

The Mail Fraud Statute (Title 18, USC, Section 1341) itie 18 Part I Chapter 63. 3) # § 1345. Injunctions against fraud (b) The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment, has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

All victims of Defendant GOLDLINE in ripoffreport.org NOT ONLY in the matter of the 20 gold Swiss franc should be interviewed. Their names and addresses should be gathered from Defendant GOLDLINE's archived files in DISCOVERY and delivered to the Plaintiff where sworn statements can be taken with special attention to questions of MAIL FRAUD, wire fraud, the misrepresentation of the value of the 20 Swiss gold franc, an imported foreign coin, high pressure Defendant GOLDLINE salesmen illegal selling methods, improper sales using the telephone as an impromptu and suddenly unannounced confirmation of purchase and the preponderance of violations against senior citizens. Special attention will be given to Plaintiffs 20 gold Swiss franc flier critique. Exhibit 2

On Thursday April 10th 2008, Plaintiff heard on radio for the first time "Buy at Defendant GOLDLINE, there are no high pressure salesmen, they are not allowed" Of course this is ex post facto and the word "now" is omitted because historically all complaints on ripoffreport.org and the Missouri Consent Order Case No. AP-06-24 mention high-pressure salesmen and the 20 gold Swiss franc. Defendant GOLDLINE's agents consistently, deceitfully and forcefully urged client Plaintiff, a 75 yr old senior citizen with impaired eyesight and others with a spurious falsehoods that buying the 20 gold Swiss franc coins, a foreign overpriced numismatic product not normally used for speculation by first time buyers would be a better investment than client's current in May of 2006 USA platinum loz eagle investments. The fraudulent overpriced numismatic 20 gold Swiss franc flier received by the Plaintiff by FedEx (mail fraud.) we now know was aimed solely at the first time buyer not the savvy numismatic coin dealers depriving knowledgeable criticisms from expert numismatic traders, wholesalers and merchants.

Plaintiff submitted online documentation of the ugly scam with specific dates and names in DIARY form with documents and timetable on RIPOFFREPORT.ORG written totally, unedited as I uncovered

the deceit in October 2007 and the failed mediation with Defendant GOLDLINE to make Plaintiff whole developed. The timeline proves that Defendant GOLDLINE committed Fraud a civil and/or criminal wrong. Fraud by Defendant GOLDLINE included intentions to deceive, including statements, acts, concealments, and omissions involving a breach of legal duty, trust or confidence by concealing the fees of the 20 gold Swiss franc which resulted in monitory injury to Plaintiff who as a first time buyer sight impaired senior citizen justifiably relied on Defendant GOLDLINE to be truthful. .

Published Internet BLOG of Defendant GOLDLINE felony fraud

http://www.ripoffreport.com/searchresults.asp?ql=ALL&q2=&q3=&q4=&q5=&q7=&q6

=oakland%20goldline&searchtype=0

i'

Definition of Fraud: *All multifarious means which human ingenuity can devise, and. •which are resorted to by one individual to get an advantage over another by false suggestions or suppression of the truth. It includes all surprises, tricks, cunning or dissembling, and any unfair way which another is cheated.* Source: *Black's Law Dictionary,* 5th ed., by Henry Campbell Black, West Publishing Co., St. Paul, Minnesota, 1979.

From the Internet: "Criminal and civil frauds differ in the level of proof required. 1) For civil cases that burden is a "preponderance of evidence." 2) In criminal fraud the standard is "beyond a reasonable doubt." Three elements are required to prove fraud: A material false statement made with an intent to deceive (scienter), A victim's reliance on the statement and Damages. I believe I have proven systemic and ongoing systematic CRIMINAL FRAUD by all management levels of Defendant GOLDLINE "beyond ALL doubt." As well other violations = see below White Collar Crime Victim Protection Act

"aggravated white collar crime" with two (2) or more similar victims of same company Chapter 817, (4). And if ten (10) people qualify for "aggravated crime victims" a fine of a minimum of $500,000 may be levied. (7) (same.)

Burden of Proof and Persuasion Decisions by the U.S. Supreme Court. In

Keyes v. Sch. Dist. No. 1, <u>413 U.S. 189</u> (1973), the <u>United States Supreme Court</u> stated:

"There are no hard-and-fast standards governing the allocation of the burden of proof in every situation. The issue, rather, 'is merely a question of policy and fairness based on experience in the different situations.'" For support, the Court cited 9 John H. Wigmore, Evidence § 2486, at 275 (3d ed. 1940). In *Keyes,* the Supreme Court held that if "school authorities have been found to have practiced purposeful segregation in part of a school system," the burden of persuasion shifts to the school to prove that it did not engaged in such discrimination in other segregated schools in the same system.

### *Defendant GOLDLINE defrauded others.* *

Now "the burden of persuasion shifts to the "Defendant GOLDLINE to prove that Defendant GOLDLINE did not defraud Plaintiff and others in a similar "PURPOSEFUL" manner using the 20 gold Swiss franc including: Dr. Kyoung Park and associates 2600 Redondo Avenue Long Beach, CA 90806 and many others who must make sworn statements some who were senior citizens living

throughout the USA who published similar fraud complaints against Defendant GOLDLINE in ripoffreport.org and/or the BBB.

1) Defendant GOLDLINE must explain the fraudulent 20 gold Swiss franc flier received by the Plaintiff by FedEx (mail fraud.) exhibit 1 and 2 and critique in detail and

2) Defendant GOLDLINE must explain the fraud in the Missouri Consent Order Case No. AP-06-24. exhibit 3

3) Defendant GOLDLINE must explain why RICO violations don't apply here. RICO was enacted by section 901 (a) of the Organized Crime Control Act of 1970 (Pub.L. 91-452, 84 Stat. 922, enacted 1970-10-15). RICO is codified as Chapter 96 of Title 18 of the United States Code, 18U.S.C. § 1961-1968. It was intended to make it easier to prosecute organized crime figures, but has been applied in several other cases as well. It can be used here since Drexel Burnham Lambert, was threatened with a RICO indictment under the legal doctrine that "corporations are responsible for their employees' crimes." A civil RICO action, like many lawsuits based on federal law, can be filed in state or federal court. [1] Both the federal and civil components allow for the recovery of treble damages (damages in triple the amount of actual/compensatory damages).

4) Defendant GOLDLINE must explain why their employees strongly urged with lies a first time buyers to buy over the phone (wire fraud) the overpriced 20 Swiss gold franc.

5) Defendant GOLDLINE must explain why they strongly urged a first time buyer to buy over the phone (wire fraud) the 20 Swiss gold franc that was selling for so far above the price of gold bullion and because of fixed fees lost half of its value immediately and Plaintiff as well as anyone now making a cursory investigation slowly came to realize that the spot price of gold had to reach $1400 an oz for the 20 gold Swiss franc to get even. The 20 gold Swiss franc sold for $60 per coin more or well over $200 more per oz by weight than other precious metal brokers wereselling the 20 Swiss gold franc for in May of 2006 but Defendant GOLDLINE touted the numismatic coin criminally as a prime investment vehicle using high pressure salesmen and fliers received by the Plaintiff by FedEx (mail fraud.) in ambush both *with false information*.

6) Defendant GOLDLINE must explain why they urged a first time buyer to buy quickly over the phone (wire fraud) the 20 Swiss gold franc that was numismatic and has historically never been a good investment and was totally disastrous to ALL first time buyers for long periods of time.

7) Defendant GOLDLINE must explain why they urged the first time buyer Plaintiff to buy over the phone (wire fraud) the 20 Swiss gold franc at $200.50 per coin in May of 2006 when spot price of gold was $692. Honest precious metal brokers at that same time May 2006 were - Plaintiff found out later - selling the 20 gold Swiss franc for approximately $130to$135a coin or $300 per oz BELOW the Defendant GOLDLINE selling price. This information was never revealed and kept quiet by Defendant GOLDLINE who falsely insisted verbally over the phone and publicly on the Defendant GOLDLINE flier received by the Plaintiff by FedEx (mail fraud.) "you get more gold for your money."

8) Today Thursday, August 29, 2008 the 20 gold Swiss franc is advertised by other brokers and on the Internet for $168.99 selling price with other HONEST brokers online commensurate in price see mintproducts.com - $300 per oz BELOW the Defendant GOLDLINE's selling price and the spot price of gold is $833.80. Defendant GOLDLINE advertises the same 20 gold Swiss franc coin today at an outlandish $264.95 -$300 per oz ABOVE the AVERAGE ONLINE and storefront BROKER's selling price. At that Defendant GOLDLINE outlandish high price it's no wonder Defendant GOLDLINE needed a telephone, a high pressure salesman and fraudulent fliers all with false information aimed at a first time buyer who had no knowledge of Defendant

GOLDLINE's precious metals crooked chicanery and brazen fraud. *The* Defendant GOLDLINE's *felony fraud was excessive, obscene, flagrant, arrogant and most of all criminal.*

Defendant GOLDLINE must explain why others in ripoffreport.org and who will be found in DISCOVERY and will be uncovered because all points to a widespread ongoing and longtime nationwide scheme conspiracy that should be prosecuted again as class action since many others complain of fraud by the Defendant GOLDLINE. They have been defrauded but perhaps were not computer literate at that time, died of old age or didn't know of ripoffreport.org a unique defense. They, the walking-wounded-by-fraud are in Defendant GOLDLINE's old files waiting for their story of the Defendant GOLDLINE fraud to be told to reveal similar illegal felony scams by Defendant GOLDLINE and sworn statements must be had by them. Some defrauded clients mediated or went for arbitration quietly but were treated unfairly and given much less than they merited and qualify under all the statutes mentioned here. The Defendant GOLDLINE scam was always profitable for the Defendant GOLDLINE giving Defendant GOLDLINE the impetus to ever keep continuing the scam. Even when Defendant GOLDLINE quietly "loses" (see Missouri consent order) exhibit 3 - Defendant GOLDLINE makes money. For instance in Plaintiff mediation with Defendant GOLDLINE Robert Fazio, senior vice President the most he could do was "give the money back," the money which had devalued in the interim. Defendant GOLDLINE did not plan to give Plaintiff the true market value of the money or the true value of the property as per various statutes cited here. Lisa Weedman later meant to libel the Plaintiff injuriously in the BBB official rebuttal writing that it was Plaintiffs attempt to "extort" the Defendant GOLDLINE. The Florida Statutes 817.034 3. Services.

(d) "Scheme to defraud" means a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act.

(e) "Value" means value determined according to any of the following: l.a. The market value of the property at the time and place of the offense "Property" means anything of value.

The Defendant GOLDLINE victim clients who did not know how to redress FRAUD were ever reluctant to hire a lawyer because of the cost settled and received much less than their initial investment which in Plaintiffs case was the platinum 1 oz eagle or for the other clients a standard typical gold bullion the customary investment always advised by honest precious metals brokers to first time buyers.

*Claims of extortion by Defendant GOLDLINE* —Defendant GOLDLINE employee Lisa Weedman wrongly accuses Plaintiff of EXTORTION in a rebuttal to the Better Business Bureau, (see exhibit 4 or ripoffreport.org.) If it truly is EXTORTION why doesn't Defendant GOLDLINE go to the Police? Why doesn't Defendant GOLDLINE take legal action against the Plaintiff? Extortion is a felony... the Plaintiff is still here! The Plaintiff is not hiding!... Or was the claim of extortion an idle threat to "impress" the BBB maliciously? A formal published official statement stating EXTORTION in defense of fraud is clearly libel, a tort of negligent infliction of emotional distress (NIED). The underlying concept is that one has a legal duty in an official capacity to use reasonable care to avoid causing emotional distress to another individual. If one fails in this in a duty as a spokesperson and unreasonably causes emotional distress to another person it is Libel. The Libel was injurious since it meant to influence the BBB and all readers. All BBB official rebuttal information can be seen on ripoffreport.org and the complaint with rebuttal was published to www.pissedconsumer.com. It cannot be deleted by anyone but the owner of the websites. Defendant GOLDLINE can take legal action against Plaintiff

anytime. But if they do they know if Defendant GOLDLINE speaks the truth they will incriminate themselves of deliberate planned avaricious FRAUD.

Extortion (Black's Law Dictionary - 6th Edition) is defined as: "The obtaining of property from another induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." GENERAL RULE: The usual fact situation for a Hobbs Act charge under color of official right is a PUBLIC OFFICIAL trading his/her official actions in an area in which he/she has actual authority in exchange for the payment of money. Calumny, libel, slander, and vilification) is the communication of a statement that makes a false claim, expressively stated or implied to be factual, that may give an individual,.. .a negative image.

*Defendant GOLDLINE is guilty of committing LIBEL* with the Lisa Weedman extortion official written statement to the BBB. The EXTORTION statement was directed against Plaintiff specifically "an intentional tort of libel aimed ...and resulting in injuries to a Florida resident subjected Defendant GOLDLINE to the reach of our long arm statute." Silver, 648 So. 2d at 242. See Achievers Unlimited, Inc. v. Nutri Herb, Inc., 7 10 So. 2d 7 16, 7 18-19 (Fla. 4th DCA 1998) (same); Caridu, 424 So. 2d at 849 (same); Caridu, 424 So. 2d at 849 (same) 50 Am.Jur.2d libel and slander 1-546, Fla. Stat. § 836.01 (2005).Plaintiffis not using covertness nor the "COLOR of official right" because Plaintiff holds no official position Lisa Weedman Defendant GOLDLINE employee does. Plaintiff is not using "force, violence or fear" Plaintiff is using the LAW openly and publicly pro se to right the wrong of Defendant GOLDLINE fraud. This is expected of a victim of fraud and perfectly legal. Plaintiff documents a 20 gold Swiss franc flier received by the Plaintiff by FedEx (mail fraud.) exhibit 1 and critique exhibit 2 Defendant GOLDLINE published to ripoffreport.org. as well as www.pissedconsumer.com previous multiple fraud in the Defendant GOLDLINE swindle in the Missouri Consent Order Case No. AP-06-24. exhibit 3 Many others defrauded by Defendant GOLDLINE are also documented in ripoffreport.org before and after Plaintiff was defrauded.

Defendant GOLDLINE's employee Lisa Weedman's bogus official libelous rebuttal to the BBB contains errors as follows:
1) Defendant GOLDLINE gives 2nd and 3rd hand hearsay, false unfounded innuendo, phony spin and downright lies written spuriously
2) Nowhere does Defendant GOLDLINE address all Plaintiffs assertions but she goes off on a tangent dishonestly and ,
3) Defendant GOLDLINE gives not one mention of issues in Plaintiffs critique of the 20 gold Swiss franc flier received by the Plaintiff by FedEx (mail fraud.) or with employees of Defendant GOLDLINE who were instrumental in defrauding Plaintiff
4) Defendant GOLDLINE refuses or cannot address Plaintiffs affirmations of multiple FRAUD.
5) Defendant GOLDLINE gives no first hand witness statement has been submitted by Defendant GOLDLINE in rebuttal to corroborate Defendant GOLDLINE official rebuttal in BBB instead answers to never-asked-for-questions given and
6) Defendant GOLDLINE gives no response to the Defendant GOLDLINE unwelcomed high pressure advice to change purchase from platinum and "to diversify" to the 20 gold Swiss franc,
7) Defendant GOLDLINE gives no answers to the high 20 gold Swiss franc sales price which covertly lost 50% of value immediately and stood to lose 30% more on sale but both high buying and selling fees were kept secret until it was time to sell,
8) Defendant GOLDLINE gives no answers to a never given 20 gold Swiss franc 10% "discount" advertised on the Defendant GOLDLINE website,

9) Defendant GOLDLINE gives no answers to the 20 gold Swiss franc touted criminally as a prime investment by Defendant GOLDLINE done so alone among precious metal brokers
10) Defendant GOLDLINE gives no answers to the biggest lie in the Defendant GOLDLINE flier received by the Plaintiff by FedEx (mail fraud.) exhibit 1 among many lies. "you get more gold for your money" and
11) Defendant GOLDLINE gives no answers to other multi-unorthodox Defendant GOLDLINE fraudulent schemes and lies articulated by Plaintiff in the 20 gold Swiss franc critique exhibit 2 and published in ripoffreport.org was never addressed in the Lisa Weedman rebuttal to the BBB
12)     Most important Lisa Weedman libeled Plaintiff maliciously in a PUBLISHED official BBB rebuttal writing that Plaintiff.. ."attempted to extort platinum coins" while she rationalized Robert Fazio Defendant GOLDLINE violating Florida Statutes 817.034

13. Services (d) and (e) when Plaintiff had asked to be made whole with "market value of the property at the time and place of the offense "Property" means anything of value."

(From Internet) "Drexel Bumham Lambert, was threatened with a RICO indictment under the legal doctrine that corporations are responsible for their employees' crimes. A civil RICO action, like many lawsuits based on federal law, can be filed in state or federal court. [1] Both the federal and civil components allow for the recovery of treble damages (damages in triple the amount of actual/compensatory damages)."

In early December 2007 Defendant GOLDLINE contacted vociferously and unannounced Plaintiff's brother Frank Quintana, a real estate lawyer at 718 797 1003 and offered 25 1 oz platinum eagles in lieu of the 27 1 oz platinum eagles Plaintiff had originally purchased asking if Plaintiff would return the (wire fraud) $34,997 that Defendant GOLDLINE had wired to Plaintiff and that the Plaintiff stop posting to ripoffreport.org. Plaintiff returned the money and stopped posting to ripoffreport.org but the Defendant GOLDLINE cut communications with Plaintiff upon receipt of money and never sent the 25 1 oz platinum eagles. Plaintiff resumed posting to ripoffreport.org.

When Plaintiff communicated to Defendant GOLDLINE by Email and ripoffreport.org that the $34,997 wired money was under a cloud and that it should have been put in escrow and mediation be continued. The Defendant GOLDLINE instead remained incommunicado and a month later Defendant GOLDLINE sent unannounced to Plaintiff by USPS (Mail fraud) received on February 11, 2008 the 174 gold Swiss francs without the 10% discount which was stated on the Defendant GOLDLINE's website (Internet fraud.) No 27 1 oz platinum eagles which were Plaintiffs original purchase or 25 1 oz platinum eagles Defendant GOLDLINE promised to Plaintiffs brother by Defendant GOLDLINE's lawyer or the market value in cash were forthcoming. All Plaintiff states herewith is documented in ripoffreport.org in real time. Ripoffreport.org is a website that cannot be edited nor changed by Plaintiff.

In accordance with prosecuting all Defendant GOLDLINE felony fraud crimes SPECIAL ATTENTION must be given to: TITLE XLVI 4. Chapter 817, relating to fraudulent practices. CRIMES 775.0844 White Collar Crime Victim Protection Act." took effect July 1, 2001 (1) This section may be cited as the "White Collar Crime Victim Protection Act." (2) Due to the frequency with which victims, particularly elderly victims, are deceived and cheated by criminals who commit nonviolent frauds and swindles, frequently through the use of the Internet and other electronic technology and frequently

causing the loss of substantial amounts of property, it is the intent of the Legislature to enhance the sanctions imposed for nonviolent frauds and swindles, protect the public's property, and assist in prosecuting white collar criminals. (3) As used in this section, "white collar crime" means: (a) The commission of, or a conspiracy to commit, any felony offense specified in: 3. Chapter 815, relating to computer-related crimes. 2. Commits the offense for the purpose of devising or executing any scheme or artifice to defraud or obtain property 4. Chapter 817, relating to fraudulent practices. 817.06 Misleading advertisements prohibited; ...knowingly or intentionally make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly,3. Services (d) and (e) when Plaintiff had asked to be made whole with "market value of the property at the time and place of the offense "Property" means anything of value."

(From Internet) "Drexel Burnham Lambert, was threatened with a RICO indictment under the legal doctrine that corporations are responsible for their employees' crimes. A civil RICO action, like many lawsuits based on federal law, can be filed in state or federal court. [1] Both the federal and civil components allow for the recovery of treble damages (damages in triple the amount of actual/compensatory damages)."

In early December 2007 Defendant GOLDLINE contacted vociferously and unannounced Plaintiff's brother Frank Quintana, a real estate lawyer at 718 797 1003 and offered 25 1 oz platinum eagles in lieu of the 27 1 oz platinum eagles Plaintiff had originally purchased asking if Plaintiff would return the (wire fraud) $34,997 that Defendant GOLDLINE had wired to Plaintiff and that the Plaintiff stop posting to ripoffreport.org. Plaintiff returned the money and stopped posting to ripoffreport.org but the Defendant GOLDLINE cut communications with Plaintiff upon receipt of money and never sent the 25 1 oz platinum eagles. Plaintiff resumed posting to ripoffreport.org.

When Plaintiff communicated to Defendant GOLDLINE by Email and ripoffreport.org that the $34,997 wired money was under a cloud and that it should have been put in escrow and mediation be continued. The Defendant GOLDLINE instead remained incommunicado and a month later Defendant GOLDLINE sent unannounced to Plaintiff by USPS (Mail fraud) received on February 11, 2008 the 174 gold Swiss francs without the 10% discount which was stated on the Defendant GOLDLINE's website (Internet fraud.) No 27 1 oz platinum eagles which were Plaintiffs original purchase or 25 1 oz platinum eagles Defendant GOLDLINE promised to Plaintiffs brother by Defendant GOLDLINE's lawyer or the market value in cash were forthcoming. All Plaintiff states herewith is documented in ripoffreport.org in real time. Ripoffreport.org is a website that cannot be edited nor changed by Plaintiff.

In accordance with prosecuting all Defendant GOLDLINE felony fraud crimes SPECIAL ATTENTION must be given to: TITLE XLVI 4. Chapter 817, relating to fraudulent practices. CRIMES 775.0844 White Collar Crime Victim Protection Act.- took effect July 1, 2001 (1) This section may be cited as the "White Collar Crime Victim Protection Act." (2) Due to the frequency with which victims, particularly elderly victims, are deceived and cheated by criminals who commit nonviolent frauds and swindles, frequently through the use of the Internet and other electronic technology and frequently causing the loss of substantial amounts of property, it is the intent of the Legislature to enhance the sanctions imposed for nonviolent frauds and swindles, protect the public's property, and assist in prosecuting white collar criminals. (3) As used in this section, "white collar crime" means: (a) The commission of, or a conspiracy to commit, any felony offense specified in: 3. Chapter 815, relating to computer-related crimes. 2. Commits the offense for the purpose of devising or executing any scheme or artifice to defraud or obtain property 4. Chapter 817, relating to fraudulent practices. 817.06

Misleading advertisements prohibited; ...knowingly or intentionally make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly,to be made, published, disseminated or circulated or placed before the public in this state (Florida) by FedEx in a newspaper or other publication or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter or in any other way, an advertisement of any sort regarding such certificate, diploma, document, credential, academic credits, merchandise, security, service or anything so offered to the public, which advertisement contains any assertion, representation or statement which is untrue, deceptive, or misleading.

(2) Any person, persons, association, copartnership, corporation, or institution found guilty of a violation of subsection (1) shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083. 11. Chapter 896, relating to offenses related to financial transactions, (b) A felony offense that is committed with intent to defraud or that involves a conspiracy to defraud, (c) A felony offense that is committed with intent to temporarily or permanently deprive a person of his or her property or that involves a conspiracy to temporarily or permanently deprive a person of his or her property, (d) A felony offense that involves or results in the commission of fraud or deceit upon a person or that involves a conspiracy to commit fraud or deceit upon a person. (4) As used in this section, "aggravated white collar crime" means engaging in at least two white collar crimes that have the same or similar intents, results, accomplices, victims, or methods of commission, or that are otherwise interrelated by distinguishing characteristics and are not isolated incidents, provided that at least one of such crimes occurred after the effective date of this act. (5) Any person who commits an aggravated white collar crime as defined in this section and in so doing either:

a) Victimizes 10 or more elderly persons, as defined in s. 825.101(5); 6) Notwithstanding any other provision of chapter 921 or any other law, an aggravated white collar crime shall be ranked within the offense severity ranking chart at offense severity level 9. (7) In addition to a sentence otherwise authorized by law, a person convicted of an aggravated white collar crime may pay a fine of $500,000 or double the value of the pecuniary gain or loss, whichever is greater.

(8) A person convicted of an aggravated white collar crime under this section is liable for all court costs and shall pay restitution to each victim of the crime, regardless of whether the victim is named in the information or indictment. As used in this subsection, "victim" means a person directly and proximately harmed as a result of the commission of the offense for which restitution may be ordered, including any person directly harmed by the Defendant GOLDLINE's criminal conduct in the course of the commission of the aggravated white collar crime. The court shall hold a hearing to determine the identity of qualifying victims and shall order the Defendant GOLDLINE to pay restitution based on his or her ability to pay, in accordance with this section and s. 775.089. (a) The court shall make the payment of restitution a condition of any probation granted to the Defendant GOLDLINE by the court. Notwithstanding any other law, the court may order continued probation for a Defendant GOLDLINE convicted under this section for up to 10 years or until full restitution is made to the victim, whichever occurs earlier, (b) The court retains jurisdiction to enforce its order to pay fines or restitution. The court may initiate proceedings against a Defendant GOLDLINE for a violation of probation or for contempt of court if the Defendant GOLDLINE willfully fails to comply with a lawful order of the court."

In witness thereof IRINA QUIRINDONGO _____ ꞋIRINA V. Quis __ (FLA NX LIC)

 this instrument was acknowledged before me on 1/27 2010 by Notary Public in and for the
State of Florida My Commission Expires:

BERNICE CAMMOCK
MY COMMISSION # DD 575289
EXPIRES: July 18, 2010
Bonded Thru Notary Public Underwriters

**< A Golden Value!**

EXHIBIT 1

# GOLD 20 FRANC COINS FROM EUROPE

**GOLDLINE OFFERS AFFORDABLE, HIGH PROFIT POTENTIAL, GOLD 20 FRANC COINS. Minted over eight decades ago by major nations in Europe, the coins we offer were carefully preserved in Uncirculated (Mint) Condition. Here are some of the specific reasons we believe every investor should acquire a holding of these desirable gold coins...**

1. **Diversify & Protect.** Increased stock market volatility, rising inflation and simmering international crises are increasing demand for real gold assets. *The Wall Street Journal* confirms that investors are turning to precious metals and rare coins as a way to diversify and protect a financial portfolio. A *New York Times* article confirmed that many successful financial managers had on average 7% of their portfolio in gold.

2. **Improving Fundamentals.** Inflation is rising and the dollar may weaken. History shows that real gold assets like these 20 Franc gold coins should rise in value. You'll profit handsomely if gold returns to its previous market high. You'll earn sizeable profits should gold rise to a new all-time high!

3. **Undervalued Gold.** The gold bullion market is near multi-decade lows, presenting a unique opportunity for savvy investors to acquire real gold assets — like the 20 Franc coins of France, Switzerland and Belgium at low, low prices.

4. **A Better Gold Buy.** At today's low level, European 20 Franc gold coins deliver more gold per dollar than any U.S gold coin of comparable size, age and condition. **You get more gold for your money.**

5. **Gold For Security & Privacy.** For security during uncertain times and for protection from confiscation, 20 Franc gold coins are exceptional assets. And they help maintain your privacy too.

6. **Limited Supplies.** The original mintage of these coins was fairly small and millions were melted for their gold value during the 1930s. More were melted in the 1970s and 1980s when gold soared to over $850 an ounce. This melting increased the scarcity and desirability of all surviving early 20th century gold coins, especially those in Uncirculated (Mint) condition.

**Conclusion: The 20 Franc gold coins' favorable value and small size makes them suitable for modest as well as sizeable investment holdings and portfolios. For diversification, protection and potential profits, acquire your 20 Franc gold coins today.**

**Call Goldline Toll-Free**
**1-800-827-4653**



Goldline
**INTERNATIONAL, INC.**
100 Wilshire Boulevard, Third Floor
Santa Monica, CA 90401

European 20 Franc coins contain exactly 0.1867 ounces of pure gold.
(Shown larger than actual 21.0 mm size)

©2001. All rights reserved.

EXHIBIT 2

# *20 gold Swiss franc GOLDLINE flier critique*

The 20 gold Swiss franc GOLDLINE flier talks of "high profits" yet:

1) The 20 gold Swiss franc GOLDLINE flier never mentions any historical instance of any profit and indeed later on mentions that there was HISTORICALLY a time when the 20 gold Swiss franc approached and exceeded the spot price of gold, it was melted down, obviously but never mentioned, to remove the negative factor of NUMISMATIC and was struck into gold eagles which have positive and investment positive factors since ithey are government CERTIFIED usually selling $20 dollars ABOVE the spot price of gold making the 20 gold Swiss franc GOLDLINE flier a liar and the 20 gold Swiss franc a historically BAD INVESTMENT. The American eagle and other certified coins have never been melted down for its gold.

2) The 20 gold Swiss franc GOLDLINE flier refers to the spot price of gold and the 20 gold Swiss franc as the same when it is not. The 20 gold Swiss franc is NUMISMATIC and doesn't appear EVER in PUBLISHED print as having value commensurate with the spot price of gold and even a smaller connection with any GOVERNMENT CERTIFIED coin such as the American gold or platinum eagles whose values are published daily. The value of the 20 gold Swiss franc is never published.

3) The 20 gold Swiss franc flier MENTIONS "more gold for the money" yet my purchase yielded 2/5 less gold for the money. I received 33 oz of gold in the 20 gold Swiss franc versus 55 oz of gold had I "diversified" with the American gold eagle. My purchase originally was for 27 1 oz platinum eagles which would be the only action by GOLDLINE to make me whole.

4) The 20 gold Swiss franc GOLDLINE flier uses the words "bullion" and the 20 gold Swiss franc as valued the same but in reality they are not. Bullion and government certified coins hold much more value therefore all other precious metal dealers I have gone to recently have offered government certified coins for investment not the collector's NUMISMATIC variety 20 gold Swiss franc.

5) The 20 gold Swiss franc sold by GOLDLINE is a scam developed systemically by all GOLDLINE upper management to defraud clients especially the first time buyer by following up the 20 gold Swiss franc GOLDLINE flier with a high pressure commission salesmen who further distorts and lies about the investment value of the 20 gold Swiss franc. Contrary to the GOLDLINE flier there is no shortage nor has there ever been a shortage of the 20 gold Swiss franc. In fact it appears it has always been numismatic and a glut in the marketplace forever a poor investment

6) The reason for high buying fee of 50% for the 20 gold Swiss franc is primarily to cover the commission. The reason for a high selling fee of 30% is to cover restoring or restocking a flawed investment product.

*document 4*

EXHIBIT 3

1 OF 2

GOLDLINE Answer to BBB

Below is the companys response to your complaint. What a company does to resolve complaints is part of the information we report to the public on individual companies. To be certain that our report on this company is accurate, we need your confirmation that this complaint has been settled. Would you take a minute to tell us about your satisfaction or dissatisfaction with the response? The red text indicates the complaints current processing status and will allow you to enter your response in the text box. If we do not hear from you within the next seven days, we will assume you have accepted the companys offer or explanation and are satisfied with it. However, please feel free to contact us again if the company has made an offer to settle your complaint and fails to perform accordingly. Thank you for using the Better Business Bureau.Company's Response

1 of 2

Company's Initial Response - Posted 02/08/2008

Company states by email Goldline has been assisting collectors and investors with their precious metals and rare coin acquisitions for nearly 50 years. In that time, we have worked with thousands of satisfied clients who consistently choose Goldline to be their precious metals company. On rare occasion, there is a customer who is prepared to misrepresent facts to seek a financial advantage. John Quirindongo appears to be such an individual. The complaint description and desired settlement sent to the BBB lacks any type of factual documentation to support Mr. Quirindongos complaint. Nor does he tell the BBB that Goldline resolved his complaint by canceling his order and fully returning his purchase price. However, Mr. Quirindongo reneged on the agreement in an effort to gain a financial advantage. Below is an accurate summary of the details of Mr. Quirondongos complaint and Goldlines response. Mr. Quirindongo purchased platinum and gold coins from Goldline after first contacting us in May 2006. Over the next 18 months, Mr. Quirindongo received storage statements for his gold and platinum coins which he paid without objection. At no time during this period did Mr. Quirindongo ever suggest that he was dissatisfied with or actually cancelled his purchase of gold coins during the refund period that Goldline provides to all of its first time customers. Mr. Quirindongo sold his platinum coins for a profit. When he found that his gold coins had not similarly appreciated, he suddenly claimed that he never wanted the gold coins and that he cancelled his order via email nearly two years earlier. From: john quirindongo [mailto:johnqu@mindspring.com] Sent: Wednesday, November 21, 2007 3:03 PM To: rfazio Subject: refund US Bank, 721 Locust Street, St. Louis, MO 63101 ABA: 081000210 Scottrade Account number: [redacted] Scottrade's Complete Mailing Address:P.O. Box 31759 St. Louis, MO 63131-0759 Further Credit to: {Your Scottrade Account Number and Account Title} My name should appear with account # [redacted] john quirindongo johnqu@mindspring.com EarthLink Revolves Around You. Mr. Quirindongo then wrote Goldline a few hours later to insist the refund include his storage fees for the gold coins From: john quirindongo [mailto:johnqu@mindspring.com] Sent: Wednesday, November 21, 2007 5:17 PM To: rfazio Subject: refund postscript I want to remind you that a 'refund' should include the 'storage fees' otherwise it is not complete.

EXHIBIT 3

2 OF 2

john quirindongo johnqu@mindspring.com EarthLink Revolves Around You. After Mr. Quirindongo received his refund (including storage fees), he went back on his word and attempted to **extort platinum coins** (which would have provided Mr. Quirindongo with a profit beyond what he already made) from Goldline with the threat of posting on a website as leverage (which he posted soon after receiving the money) In one of a series of emails that followed, Mr. Quirindongo wrote: From: john quirindongo [mailto:johnqu@mindspring.com] Sent: Saturday, December 01, 2007 5:01 AM To: rfazio Subject: FW: lawyer oh yes send me the amount of the wire you sent me and I will deduct the 'storage fees' and 'differential' and wire you the rest on Monday which will leave only the 27 platinum 1 oz eagles the subject of negotiations for the 'refund' and the favorable 'ripoff.org posting' john quirindongo johnqu@mindspring.com EarthLink Revolves Around You. In another email, he wrote: I will give favorable posting on RIPOFF.ORG (I'll even let you write the favorable posting - I'll copy and paste) Mr. Quirindongo later sought the advice of his brother, a lawyer, who apparently cautioned Mr. Quirindongo against his questionable conduct:

From: john quirindongo [mailto:johnqu@mindspring.com] Sent: Tuesday, December 04, 2007 4:08 PM To: rfazio Subject: refund Yesterday I called my brother who is a lawyer with his son listed under Frank and Michael Quintana in NYC with an office in Court St. Bklyn and explained the situation. He told me to deny the wire transfer the exact amount would be returned and then negotiate. He said I was premature in posting to rip-off although I had a good grievance I should t threaten or go to gov't agencies but do so only if the negotiation turns sour. I will put off posting to rip-off until we negotiate in writing. You should receive wire transfer Wednesday john quirindongo johnqu@mindspring.com EarthLink Revolves Around You. Goldline ultimately received a return of the refund that Mr. Quirindongo initially demanded (the refund which would have placed Mr. Quirindongo in the same position had he actually cancelled his original order). However, rather than attempting to resolve the matter as his brother suggested, Mr. Quirindongo chose instead to amend his ripoffreport

While Goldline is committed to exemplary client relations, it cannot condone or participate in this type of behavior. As such, we have ceased communication with consumer.

EXHIBIT 4

1 OF 3

State of Missouri
Office of Secretary of State

Case No. AP-06-24

IN THE MATTER OF:

GOLDLINE INTERNATIONAL, INC.;


Respondent,


<u>CONSENT ORDER</u>

The Missouri Securities Division ("Division") alleges that the Respondents engaged in unregistered investment advisor activity subject to discipline under Chapter 409, RSMo, et seq.
WHEREAS, Respondents and the Division desire to settle the allegations and the matters raised by the staff of the Division relating to said alleged violations.
Whereas, Respondents and the Division consent to the issuance of this Consent Order and hereby stipulate that this Consent Order is in the public interest.
WHEREAS, Respondents stipulate and agree to the issuance of this Consent Order without further proceedings in this matter, agreeing to be fully bound by the terms and conditions specified herein and waive their rights to a hearing with respect to this matter and further stipulate and agree that they waive any right they may have to seek judicial review or otherwise challenge or contest the terms and conditions of this Consent Order.
Whereas Respondents stipulate and agree that, should the facts contained herein prove to be false or incomplete, the Missouri Securities Division preserves the right to pursue any and all legal or administrative remedies at its disposal.
WHEREAS, Respondents agree not to take any action or to make or permit to be made any public statement creating the impression that this Order is without a factual basis.
WHEREAS, Respondents agree to be responsible for their own costs and attorneys fees.
WHEREAS, This Consent Order represents a settlement between the parties. It is expressly understood that the Stipulation and Order are for the purpose of resolving this proceeding only and are not to constitute admissions of jurisdiction and liability or wrong doing for any purpose or proceeding.
WHEREAS, Respondents and the Enforcement Section of the Securities Division stipulate and agree that the Commissioner has authority to enter this Order pursuant to Section 409.6-604(h), RSMo, Supp. 2005, which provides:

> "The commissioner is authorized to issue administrative consent order in the settlement of any proceeding in the public interest under this act."


WHEREAS, Respondents neither admit nor deny the allegations made by the Securities Division but consent to the Commissioner's Findings of Fact as set forth below solely for the purposes of this proceeding and any proceeding that may be brought to enforce the terms of this Consent Order.
WHEREAS, Respondents and the Division stipulate and agree to the Commissioner's following findings of facts:

EXHIBIT 4

2 OF 3

## COMMISSIONER'S FINDINGS OF FACT

Goldline is a company headquartered in Santa Monica, California.

Goldline is primarily in the business of selling precious metals in the form of bullion and numismatic coins. Between November 2005 and June 2006, Goldline, through its agents sold gold and silver bullion and gold and silver coins over the phone to an Missouri resident in numerous transactions.

Goldline received compensation based directly or indirectly upon the offer or sale of the coins and bullion. The Division alleges Goldline violated Section 409.4-403 RSMo., Supp. 2005, when:

    a.  Goldline's agent told MR that the coins would be a better investment than MR's current investments.

    b.  Goldline's agent advised MR to sell her annuity to pay for the purchase of more coins.

At all times relevant, records maintained by the Missouri Commissioner of Securities contained no registration for Goldline as an investment advisor.

## ORDER

WHEREAS, the Commissioner after consideration of the stipulations set forth above and on the consent of Respondents and the Securities Division, find the following Order to be in the public interest and consistent with the provisions of Chapter 409, RSMo Supp. 2005.

NOW, THEREFORE, it is hereby ordered that:

Upon the condition and event that the Missouri investor returns to Goldline:

    a.  All coins and paper currency held in her possession and forgoes any and all claims of ownership to the five coins currently held by Goldline on behalf of the Missouri resident (see Exhibit A attached); and

    b.  The check for $2,949.86 previously sent to the Missouri resident by Goldline in connection with trade #43-14358, then

Goldline shall rescind all transactions that occurred with the Missouri resident after November 22, 2005, by paying the Missouri resident $217,267.87; and

Goldline shall send twenty-six (26) one ounce $50US Gold Eagle coins to the Missouri resident within thirty (30) days from the date of this order.

IT IS FURTHER ORDERED that:

Goldline is ordered to pay seven thousand, three hundred and seventy dollars ($7,370) as the cost of this investigation. This amount shall be payable to the Missouri Secretary of State's Investor Education and Protection Fund. This amount shall be immediately due and payable, and shall be submitted to the Securities Division at 600 W. Main St, Jefferson City, MO 65101; and

Goldline is ordered to pay thirty two thousand dollars ($32,000) into the Missouri Secretary of State's Investor Education and Protection Fund. This amount shall be immediately due and payable, and shall be submitted to the Securities Division at 600 W. Main St, Jefferson City, MO 65101.

SO ORDERED:

WITNESS MY HAND AND OFFICIAL SEAL OF MY OFFICE AT JEFFERSON CITY, MISSOURI THIS 6TH DAY OF OCTOBER, 2006.

ROBIN CARNAHAN

SECRETARY OF STATE

(Signed/Sealed)

MATTHEW D. KITZI

COMMISSIONER OF SECURITIES

Consented to by:

Missouri Securities Division


Lori Neidel

Chief Enforcement Counsel

EXHIBIT 4

3 OF 3

Goldline

By
Grant Marylander, General Counsel
for Goldline International, Inc.

### EXHIBIT A

The following items are held by the Missouri resident and are to be returned to Goldline at Goldline's expense:

Coins:
153 Gold 20 Swiss Franc
1,250 $1 circulated AG silver (956.25 troy ounces)
1, 2000 Colored Silver Eagle
350, 1st Strike MS69 2006 Silver Eagle
17, 1st Strike MS69 2006 Gold Eagle

Paper currency:
1, 1880 $10 FR104 ATLCH Note
4, 1880 $10 FR107 PMG66 Note
1, 1891 $20 FR375 PMG64 Note
1, 1880 $20 FR135 PMG65 Note
1, 1929 $5 FR1800 PCGS67 Note
Check #20141 from Bank of America Acct #xxx661 issued by Goldline for
$2,949.86

The following items are held by Goldline and are to be returned to Goldline:
3, 1st Strike MS69 2006 Gold Eagle coins
2, 1st Strike MS70 2006 Gold Eagle coins

V. DEPOSITIONS AND DISCOVERY > Rule 33.
Rule 33. Interrogatories to Parties

*AddENduM 1*

*1 oF 2*

(a) In General.

(1) Number.

Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).

(2) Scope.

An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

(b) Answers and Objections.

(1) Responding Party.

The interrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

(2) Time to Respond.

The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(3) Answering Each Interrogatory.

Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(4) Objections.

1

*Addendum 2*

*2 of 2*

The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

(5) Signature.

The person who makes the answers must sign them, and the attorney who objects must sign any objections.

(c) Use.

An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence.

(d) Option to Produce Business Records.

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Federal Rules of Civil Procedure

VI. TRIALS > Rule 38.
Rule 38. Right to a Jury Trial; Demand

*Addendum 2*
*1 of 1*

(a) Right Preserved.

The right of trial by jury as declared by the Seventh Amendment to the Constitution — or as provided by a federal statute — is preserved to the parties inviolate.

(b) Demand.

On any issue triable of right by a jury, a party may demand a jury trial by:

(1) serving the other parties with a written demand — which may be included in a pleading — no later than 10 days after the last pleading directed to the issue is served; and

(2) filing the demand in accordance with Rule 5(d).

(c) Specifying Issues.

In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable. If the party has demanded a jury trial on only some issues, any other party may — within 10 days after being served with the demand or within a shorter time ordered by the court — serve a demand for a jury trial on any other or all factual issues triable by jury.

(d) Waiver; Withdrawal.

A party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent.